UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RADHA BHATIA, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:09-CV-1086-B |
| | § | |
| HAROLD DISCHINO, et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Motion of Defendant Pension Strategies, LLC to Dismiss First Amended Complaint for Failure to State a Claim ("Motion to Dismiss") (doc. 14). For the reasons stated below, the Court finds the Motion should be and hereby is **GRANTED in part** and **DENIED in part** (doc. 14).

## I.

## BACKGROUND[1]

This case is before the Court as a result of a forum transfer from a federal district court in New Jersey to this Court by the Multidistrict Litigation Panel. This action arises out of Plaintiffs' purchase of a tax shelter investment plan. (*See generally* First Am. Compl.)

### A. Establishment of the Value Life Plan

---

[1] The Court takes its factual account from the allegations contained in the First Amended Complaint (doc. 12). *See D.J. Invs., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 546 (5th Cir. 1985); *see also Shushany v. Allwaste, Inc.*, 992 F.2d 517, 520 (5th Cir. 1993)(holding a dismissal for failing to state fraud with sufficient particularity under Rule 9(b) is a dismissal on the pleadings for failure to state a claim and, as such, all well-pleaded factual allegations in the complaint should be accepted as true).

The plaintiffs in this action are psychologist Radha Bhatia, her husband Motilal Bhatia, and Radha Bhatia's private psychology practice Value Life Psychological Services, LLC. (*Id.* at ¶¶ 21-23.) In October 2004, Radha and Motilal Bhatia (the "Bhatias") conferred with accountant Ron Markovich ("Markovich") of Dischino and Associates, P.C. as to any further actions they should take with regard to their finances. (*Id.* at ¶¶ 33-34.) Markovich recommended the Bhatias consider establishing a 412(i) retirement plan. (*Id.* at ¶ 35.)

A 412(i) plan is a retirement plan frequently utilized by small professional service companies that offers attractive tax benefits. (*Id.* at ¶ 37.) Such plans are considered "defined benefit plans" because they provide for a defined level of benefits upon retirement. (*Id.*) The plans are unique because they are comprised entirely of annuities or life insurance contracts. (*Id.*) Notably, because the 412(i) plans can potentially serve as abusive tax shelters, the IRS has cautioned against the potentially illegal use of such plans since 1989. (*Id.* at ¶ 39.) On February 13, 2004, the IRS specifically issued Revenue Rulings 2004-20 and 2004-21 to address such abuses. (*Id.* at ¶ 44.)

Upon Markovich's recommendation, the Bhatias met with Harold Dischino ("Dischino") of Dischino and Associates, P.C. to further discuss the establishment of a 412(i) plan. (*Id.* at ¶ 47.) Dischino emphasized the plan's benefits and assured the Bhatias the plans were approved by the IRS. (*Id.* at ¶¶ 49-50.) In December 2004, the Bhatias met with Robert Lang, a financial advisor at Lorac Financial Services, Inc. ("Lorac"), to further discuss the potential benefits of establishing a 412(i) plan. (*Id.* at ¶¶ 27, 51-52.)

In late 2004, the Bhatias decided to proceed with establishing a 412(i) plan. (*Id.* at ¶ 54.) Accordingly, the Bhatias worked with Economic Concepts, Inc. ("ECI"), an executive benefit planning company, and Pension Strategies, LLC ("Pension Strategies"), a company that helps in the

administration and management of retirement plans, to establish their 412(i) plan. (*Id.* at ¶¶ 29, 31, 54.) As part of establishing the Bhatias' 412(i) plan, two Lorac financial advisors – Matt Lang and Robert Lang – proposed a model under which the Bhatias would make minimum contributions of $360,107 per year. (*Id.* at ¶¶ 26-27, 55, 57.) Neither Matt nor Robert Lang ever mentioned the possibility the 412(i) plan could be considered an abusive tax shelter or that the IRS required the filing of certain forms in conjunction with such plans. (*Id.* at ¶¶ 58-59.) Subsequently, the Bhatias determined the proposed minimum contribution would be too expensive for their budget. (*Id.* at ¶ 62.) Accordingly, Matt Lang, Robert Lang, ECI, and Pension Strategies allegedly conspired together to modify the annual contribution level to $248,212. (*Id.*) On March 30, 2005, the Bhatias officially established their 412(i) plan (the "Value Life Plan"). (*Id.* at ¶ 63.) On October 25, 2005, the Bhatias received notice of a favorable determination by the IRS as to the Value Life Plan. (*Id.* at ¶ 65.)

**B. IRS Investigation of the Value Life Plan**

On June 30, 2006, the IRS served a Notice of Summons on ECI regarding the Value Life Plan. (*Id.* at ¶ 68.) Subsequently, the Bhatias were notified they would be audited by the IRS. (*Id.* at ¶ 70.) In preparing for the audit, the Bhatias discovered the Value Life Plan reflected multiple questionable practices on the part of Dischinio. (*Id.* at ¶¶ 69, 71.) Further, the Bhatias learned the Value Life Plan was operating in a way considered abusive by the IRS. (*Id.* at ¶ 72.)

In November 2006, it additionally became apparent to the Bhatias the Value Life Plan was operating at a loss of $266,671. (*Id.* at ¶ 73.) Accordingly, the Bhatias initiated discussions about changing the plan. (*Id.*) During discussions with Robert Lang and ECI, the Bhatias were advised to continue with the Value Life Plan despite its poor performance. (*Id.* at ¶¶ 74-75.) Attorney Gary

Young additionally advised the Bhatias the plan was a useful way to save for retirement despite its defects.  (*Id.* at ¶¶ 76-77.)

On October 11, 2007, the IRS concluded its audit investigation and recognized three major issues at play in the Value Life Plan.  (*Id.* at ¶ 78.)  First, the Value Life Plan was operating as an abusive and impermissible tax haven.  (*Id.* at ¶ 79.)  This fact was allegedly the result of Pension Strategies' failure to correctly perform their actuarial duties.  (*Id.* at ¶ 80.)  Second, Dischino had failed to file Disclosure Form 8886 for the Value Life Plan for the previous two years - a filing required by the IRS.  (*Id.* at ¶ 81.)  Third, Dischino had regularly misfiled forms and been forced to re-file, incurring penalties for the Bhatias without their knowledge.  (*Id.* at ¶ 82.)  Upon receiving the letter from the IRS, the Bhatia's completely dissolved the Value Life Plan and informed the IRS of its dissolution on October 11, 2007.  (*Id.* at ¶ 83.)

Ultimately, the Bhatia's establishment of the Value Life Plan proved very costly in fines and losses.  (*Id.* at ¶¶ 84-86.)  The Bhatias were subject to $50,196 in penalties for under reporting, $900,000 in penalties for failure to file Form 8886, and $270,000 in losses for being forced to exchange the Indy Life policy as part of the plan's dissolution.  (*Id.*)  Further, as part of changing the plan, the Bhatias were limited to selecting another Indianapolis Life Insurance Company ("Indy Life") policy.  (*Id.* at ¶ 92.)  Based on misleading representations by Indy Life as to another Indy Life policy's expected performance, the Bhatia's purchased an Indy Life policy that ultimately incurred additional losses.  (*Id.* at ¶¶ 91-99.)

## C. The Instant Action

On January 20, 2009, Radha Bhatia, Motilal Bhatia and Value Life Psychological Services, LLC ("Plaintiffs") filed their First Amended Complaint asserting claims for violations of the

Employee Retirement Income Security Act, fraud and concealment, breach of fiduciary duty, and rescission against all Defendants[2]. (*Id*. at ¶¶ 100-129.) The Plaintiffs further assert claims of professional negligence/malpractice against Dischino, Dischino and Associates, P.C., Kenneth Hartstein, ECI, Robert Lang, Matthew Lang, and Lorac, and negligence against ECI, Kenneth Hartstein, and Pension Strategies. (*Id*. at ¶¶ 130-158.)

Defendant Pension Strategies filed the instant Motion to Dismiss on January 23, 2009 seeking to dismiss Plaintiffs' claims under Federal Rules of Civil Procedure 12(b)(6) and 9(b). Having considered the Parties' briefing and the relevant law, the Court now turns to the merits of its decision.

## II.

## LEGAL STANDARD

### A. Law Applicable in MDL Cases

Because the Court is hearing this action as a result of a forum transfer by the Multidistrict Litigation Panel, if called upon to address matters of state law, the Court is bound to apply the state law of the transferor forum. 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* ("Wright & Miller") § 3866 (2007) (citing *In re Air Disaster at Ramstein Air Base, Germany*, 81 F.3d 570, 576 (5th Cir. 1996)); *Menowitz v. Brown*, 991 F.2d 36, 40 (2d Cir. 1993) (other citations omitted). As to matters of federal law, however, it is the law of the transferee court that governs. *Menowitz*, 991 F.2d at 40 (citing *In re Korean Air Lines Disaster*, 829 F.2d 1171,

---

[2]The Defendants in this action are Harold Dischino, Dischino and Associates, P.C., Robert Lang, Matthew Lang, Lorac Financial Services, Inc., Kenneth Hartstein, Economic Concepts, Inc., Pension Strategies, LLC, and Indianapolis Life Insurance Company.

1175 (D.C. Cir. 1987) (other citations omitted)). Thus, because pleading requirements are purely matters of federal law, the Court looks to the law of the transferee court - this Circuit - for controlling Rule 12(b)(6) and Rule 9(b) standards. *Prudential Ins. Co. Of America v. Clark Consulting, Inc.*, 548 F. Supp. 2d 619, 623 (N.D. Ill. 2008) (noting pleading requirements in federal courts are governed by the federal rules and not by state law).

### B. Motions to Dismiss Under Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a)(2) provides that a pleading stating a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007). The Court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). However, a pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 555). Therefore, to survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Id.* (quoting *Twombly*, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

### C. Motions to Dismiss Under Rule 9(b)

Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The amount of

particularity required to sufficiently plead fraud differs based upon the context of each case. *Williams v. WMX Techs, Inc.*, 112 F.3d 175, 178 (5th Cir. 1997).  However, generally Rule 9(b) requires a specification as to which statements were fraudulent, the identity of the speaker, when and where the statements were made, and an explanation as to why the statements were fraudulent. *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004).  This standard has been analogized to the essential requirements of the first paragraph of a newspaper article - the who, what, where, when and why. *Melder v. Morris*, 27 F.3d 1097, 1100 n. 5 (5th Cir. 1994).

## III.

## ANALYSIS

In its Motion to Dismiss, Pension Strategies argues Plaintiffs' claims for violation of ERISA, fraud and concealment, breach of fiduciary duty, rescission and negligence should be dismissed. Accordingly, the Court will consider each issue in turn after preliminarily addressing the exhibits attached to the Motion to Dismiss.

### A. The Exhibits Attached to Pension Strategies' Motion to Dismiss

Pension Strategies attaches copies of the Value Life Psychological Services, LLC Defined Benefit Pension Plan and Pension Strategies, LLC's Service Agreement Letter as exhibits to its Motion to Dismiss.  (*See* Memorandum of Law in Supp. Of Mot. Of Def. Pension Strategies, LLC to Dismiss Pls.' First Am. Compl. For Failure to State a Claim at Exs. 1-2.)  A Court may consider documents attached to a motion to dismiss but not included in the complaint if such documents are referenced in the plaintiff's complaint and are central to the plaintiff's claims.  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).  Plaintiffs repeatedly reference the Value Life Plan in the First Amended Complaint, and it is clearly central to their claims.  (*See generally* First

Am. Compl.)   As such, the Court may appropriately consider the Value Life Plan as part of its analysis.   Additionally, Plaintiffs make several references to their reasons for hiring Pension Strategies and the duties they expected Pension Strategies to perform.   (*See id.* at ¶¶ 80, 90, 109, 147-49.)   Accordingly, the Pension Strategies, LLC Service Agreement Letter is likewise indirectly referenced throughout the Complaint and central to Plaintiffs' claims against Pension Strategies. As such, the Court will additionally consider the Service Agreement Letter in analyzing Pension Strategies' Motion to Dismiss.

### B. The Employee Retirement Income Security Act Violation Claim

Pension Strategies contends it does not qualify as a fiduciary under the Employee Retirement Income Security Act ("ERISA") because third-party administrators and actuaries are not defined as fiduciaries under the statute.   (Mem. In Supp. Of Mot. Of Def. Pension Strategies, LLC to Dismiss First Am. Compl. For Failure to State a Claim 12-14.)   Additionally, Pension Strategies argues it is not a fiduciary because it does not render "investment advice" as defined by the Department of Labor regulations.   (*Id.* at 14-16.)   Thus, Pension Strategies contends it cannot be held liable as a fiduciary under ERISA and Plaintiffs' ERISA violation claim should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.   (*Id.* at 14-17.)

Plaintiffs counter that Pension Strategies does, in fact, qualify as a fiduciary under ERISA because it rendered investment advice for a fee.   (Pls.' Resp. To Def. Pension Strategies, LLC's Mot. To Dismiss 5.)   Plaintiffs further argue the fact Pension Strategies was operating as an actuary does not preclude it from being considered a fiduciary under ERISA because Pension Strategies was not merely calculating contributions but rendering vital instructions for a special type of retirement plan. (*Id.* at 9-10.)

ERISA provides that

> [A] fiduciary is a person with respect to a plan to the extent (I) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. . . .

29 U.S.C. § 1002(21)(A).

Because ERISA is federal law, the law of this Circuit shall apply. *See Menowitz*, 991 F.2d at 40 (citing *In re Korean Air Lines Disaster*, 829 F.2d 1171, 1175 (D.C. Cir. 1987)(other citations omitted)). The Fifth Circuit has recognized Congress's intent for the definition of "fiduciary" under ERISA to be broadly construed. *Donovan v. Mercer*, 747 F.2d 304, 308 (5th Cir. 1984). Thus, "[a]n ERISA fiduciary includes anyone who exercises discretionary authority over the plan's management, anyone who exercises authority over the management of its assets, and anyone having discretionary authority or responsibility in the plan's administration." *Reich v. Lancaster*, 55 F.3d 1034, 1046 (5th Cir. 1995)(quoting *Pacificare, Inc. v. Martin*, 34 F.3d 834, 837 (9th Cir. 1994)(quoting *Credit Managers Ass'n v. Kennesaw Life and Accident Ins. Co.*, 809 F.2d 617, 625 (9th Cir. 1987))); *see also Donovan*, 747 F.2d at 308 ("'[F]iduciary' should be defined not only by reference to particular titles, such as 'trustee,' but also by considering the authority which a particular person has or exercises over an employee benefit plan."). Yet having an influential role in plan decisions does not necessarily render one a fiduciary. *Id.* at 1048 (citing *Schloegel v. Boswell*, 994 F.2d 266, 271 (5th Cir. 1993). Rather, whether one's influence essentially confers effective discretionary authority is the benchmark by which such determinations should be made. *Id.* (quoting *Maniace v. Commerce Bank*, 40 F.3d 264, 267 (8th Cir. 1994); *Smith v. Nat'l Credit Union Admin. Bd.*, 36 F.3d 1077, 1082 (11th Cir. 1994).).

The Court will begin its analysis by addressing Pension Strategies' contention that its role as an actuary precludes it from being considered a fiduciary under ERISA. (Mem. In Supp. Of Mot. Of Def. Pension Strategies, LLC to Dismiss First Am. Compl. For Failure to State a Claim 12-14.) While professional service providers are typically not held liable as ERISA fiduciaries, the Court notes such liability is possible based upon an assessment of the professional service provider's authority over the plan. *See Mertens v. Hewitt Assocs.*, 948 F.2d 607, 610 (9th Cir. 1991). Thus, the Court is not persuaded Pension Strategies cannot be a fiduciary based solely on its role as an actuary.

The Court next focuses its analysis on Plaintiffs' specific allegation Pension Strategies qualifies as a fiduciary under 29 U.S.C. § 1002(21)(A)(ii) because it rendered investment advice for a fee. (First Am. Compl. ¶ 109.) The Department of Labor has provided further guidance as to what qualifies as rendering "investment advice" specifically with regard to § 1002(21)(A)(ii):

> (1) A person shall be deemed to be rendering "investment advice" to an employee benefit plan, within the meaning of section 3(21)(A)(ii) of the Employee Retirement Income Security Act of 1947 (the Act) and this paragraph, only if:
>> (I) Such person renders advice to the plan as to the value of securities or other property, or makes recommendation as to the advisability of investing in, purchasing, or selling securities or other property; and
>> (ii) Such person either directly or indirectly (e.g., through or together with any affiliate) –
>>> (A) Has discretionary authority or control, whether or not pursuant to an agreement, arrangement or understanding, with respect to purchasing or selling securities or other property for the plan; or
>>> (B) Renders any advice described in paragraph (c)(1)(I) of this section on a regular basis to the plan pursuant to a mutual agreement, arrangement or understanding, written or otherwise, between such person and the plan or a fiduciary with respect to the plan, that such services will serve as a primary basis for investment decisions with respect to plan assets, and that such person will render individualized investment advice to the plan based on the particular needs of the plan regarding such matters as, among other things, investment policies or strategy, overall portfolio composition, or diversification of plan investments.

29 C.F.R. § 2510.3-21(c). These regulations seemingly establish two criteria used to determine whether one is rendering investment advice. First, one must render advice to the plan. Plaintiffs allege Pension Strategies advised the Bhatias on making appropriate contributions to the Value Life Plan each year. (First Am. Compl. ¶¶ 80, 90.) As such, Plaintiffs have pleaded sufficient facts on this point.

Second, one must either have discretionary control with respect to the plan or render advice on a regular basis as part of an arrangement where such advice will serve as the primary basis of investment decisions. *See* 29 C.F.R. § 2510.3-21(c). Plaintiffs have not pleaded sufficient facts to show Pension Strategies possessed discretionary control with respect to the Value Life Plan. *See Schloegel*, 994 F.2d at 272 ("Mere influence over the trustee's investment decisions . . . is not effective control over plan assets."); *Pappas v. Buck Consultants, Inc.*, 923 F.2d 531, 535 (7th Cir. 1991) (noting discretionary authority refers to actual decision-making power, not the influence a professional may have over plan decisions). Nor have Plaintiffs pleaded sufficient facts to show Pension Strategies rendered advice on a regular basis as part of a mutual agreement that such advice serve as the primary basis of investment decisions. *See Schloegl*, 994 F.2d at 273. Accordingly, the Court finds Plaintiffs have failed to plead adequate facts giving rise to a plausible claim against Pension Strategies as a fiduciary under ERISA. Thus, to the extent Pension Strategies moves the Court to dismiss Plaintiff's ERISA violation claim under Rule 12(b)(6), the Motion should be **GRANTED**.

### B. The Fraud Claim

Pension Strategies contends Plaintiffs' fraud claim fails to meet the requisite pleading standard of Rule 9(b) because its allegations refer to Defendants together as a group, rather than

specifically informing Pension Strategies of the nature of its alleged participation in the fraud. (Mem. In Supp. Of Mot. Of Def. Pension Strategies, LLC to Dismiss the First Am. Compl. For Failure to State a Claim 18.) Further, Pension Strategies contends Plaintiffs have failed to set forth any facts establishing the elements of a fraud claim. (*Id.*)

Plaintiffs contend they are not required to allege the date, place, or time of each misrepresentation or each fraudulent act. (Pls.' Resp. To Def. Pension Strategies, LLC's Mot. To Dismiss 14.) Rather, Plaintiffs argue they are only required to plead sufficient facts to place defendants on notice of the precise misconduct with which they are being charged. (*Id.* at 15.) Plaintiffs contend they have met this requirement. (*Id.*)

Under New Jersey law, "[t]o establish common law fraud, a plaintiff must prove: '(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Banco Popular North America v. Gandi*, 876 A.2d 253, 260 (N.J. 2005) (quoting *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997)). "The 'deliberate suppression of a material fact that should be disclosed' is viewed as 'equivalent to a material misrepresentation (i.e., an affirmative misrepresentation),' which will support a common law fraud action." *Winslow v. Corporate Express, Inc.*, 834 A.2d 1037, 1044 (N.J. Super. Ct. App. Div. 2003) (quoting *New Jersey Econ. Dev. Auth. v. Pavonia Restaurant, Inc.*, 725 A.2d 1133, 1139 (N.J. Super. Ct. App. Div. 1998)).

Yet while the Court looks to New Jersey law for the substantive elements of the fraud claim, the law of the Fifth Circuit applies to the extent Pension Strategies is challenging the pleadings under Rule 9(b)'s pleading requirements. *See Menowitz*, 991 F.2d at 40 (citing *In re Korean Air Lines*

*Disaster*, 829 F.2d 1171, 1175 (D.C. Cir. 1987) (other citations omitted)).  In the Fifth Circuit, Rule 9(b) generally requires a specification as to which statements were fraudulent, the identity of the speaker, when and where the statements were made, and an explanation as to why the statements were fraudulent.  *See Southland Sec. Corp.,* 365 F.3d at 362.

Plaintiffs' First Amended Complaint makes limited reference to the allegedly fraudulent actions of Pension Strategies.  (*See generally* First Am. Compl.)  Plaintiffs vaguely assert Pension Strategies helped to "establish, administer, and maintain" the Value Life Plan.  (*Id*. at ¶ 4.)  Further Plaintiffs reference Pension Strategies being "hired to ensure that the Bhatias contributed appropriate sums of money each year."  (*Id*. at ¶ 80; *see also* ¶ 90 (referencing Pension Strategies' "seriously flawed advice").)  Yet none of these allegations specify when the fraudulent behavior occurred and who specifically engaged in such allegedly fraudulent behavior.  Accordingly, the Plaintiffs' allegations fail to meet Rule 9(b)'s particularity standard.

Notably, in asserting their fraud claim, Plaintiffs make a number of allegations as to the "Defendants" as a group.  (*Id*. at ¶¶ 115-123.)  Multiple defendants' conduct may be "lumped together" if the plaintiff's allegations elsewhere designate the nature of the defendants' relationship to a particular scheme and identify the defendants' role.  *Steiner v. Southmark Corp.*, 734 F. Supp. 269, 274 (N.D. Tex. 1990).  However, Rule 9(b) still requires a plaintiff to assert "the time, place, and nature of alleged fraudulent behavior and [a defendant's] relationship thereto."  *Id*.  As such the Court finds that while Plaintiffs' lumping of the Defendants' conduct together is not lethal to their claim, their failure to allege Pension Strategies' conduct elsewhere with the requisite specificity does render the claim insufficient.  Accordingly, to the extent Pension Strategies' Motion to Dismiss seeks to dismiss Plaintiff's fraud claim under Rule 9(b), the Motion should be **GRANTED**.

### C.  The Common Law Breach of Fiduciary Duty Claim

Pension Strategies argues Plaintiffs' common law breach of fiduciary duty claim must fail because no facts are alleged from which the Court could infer a fiduciary relationship existed between Pension Strategies and the Plaintiffs.  (Mem. In Supp. Of Mot. Of Def. Pension Strategies, LLC to Dismiss the First Am. Compl. For Failure to State a Claim 20.)  Specifically, Pension Strategies notes "unlike the case of the other Defendants, Plaintiffs allege no special trust and confidence in Pension Strategies, and they recite no long series of meetings and communications with Pension Strategies such as they had with the other Defendants which may arguably have given rise to such a relationship."  (*Id.* at 21.)

Plaintiffs contend the Bhatias placed trust and confidence in Pension Strategies in the manner in which one would place trust in an investment advisor.  (Pls.' Resp. To Def. Pension Strategies, LLC's Mot. To Dismiss 20.)  Specifically, Plaintiffs trusted Pension Strategies to accurately determine how much to contribute to the Value Life Plan.  (*Id.*)  Thus, because Pension Strategies failed to provide such accurate instruction, and Plaintiffs resultantly suffered economic harm, Plaintiffs claim for breach of fiduciary duty should stand.  (*Id.* at 20.)

Under New Jersey law, "[t]he essence of a fiduciary relationship is that one party places trust and confidence in another who is in a dominant or superior position.  *McKelvey v. Pierce*, 800 A.2d 840, 859 (N.J. 2000).  Thus, "[a] fiduciary relationship arises between two persons when one person is under a duty to act for or give advice for the benefit of another on maters within the scope of their relationship."  *F.G. v. MacDonell*, 696 A.2d 697, 704 (N.J. 1997) (citing Restatement (Second) of Torts § 874 cmt. a (1979)).

Plaintiffs allege Pension Strategies gave them faulty advice regarding their contributions to

the Value Life Plan. (*See* First Am. Compl. ¶¶ 80, 90.) Yet, Plaintiffs do not provide allegations showing Pension Strategies was acting under a fiduciary duty. Plaintiffs pleadings fail to show they placed trust and confidence in Pension Strategies and that Pension Strategies was operating in a dominant or superior position. Not having pleaded facts showing a fiduciary duty exists, the Court finds Plaintiffs have failed to state a claim upon which relief may be granted. Thus, to the extent Pension Strategies moves to dismiss Plaintiffs' breach of fiduciary duty claims under Rule 12(b)(6), the Motion should be **GRANTED**.

### D. The Rescission Claim

Pension Strategies notes the First Amended Complaint "speaks expressly only in terms of rescinding the insurance policies and recovering the premiums." (Mem. In Supp. Of Mot. Of Def. Pension Strategies, LLC to Dismiss the First Am. Compl. For Failure to State a Claim 21.) Therefore, because the First Amended Complaint does not allege Pension Strategies is a party to the insurance contract and/or received any consideration from the Plaintiffs related to the insurance contract, the Rescission claim should be dismissed. (*Id.*) Plaintiffs have offered no response on this point.

New Jersey law recognizes rescission to be a remedy intended "to restore the parties to the *status quo ante* and prevent the party who is responsible for [a] misrepresentation from gaining a benefit." *Bonnco Petrol, Inc. v. Epstein*, 560 A.2d 655, 662 (N.J. 1989). Plaintiffs allege that "[i]n order to restore the Bhatias to their rightful position, it is necessary to rescind the subject insurance policies, *ab initio*." (First. Am. Compl. ¶ 128.) However, Plaintiffs do not allege Pension Strategies is a party to the insurance contracts in question. Accordingly, the Court finds Plaintiffs have failed to allege a claim upon which relief can be granted. Thus, to the extent Pension Strategies Motion

to Dismiss seeks to dismiss Plaintiffs' rescission claim under Rule 12(b)(6), the Motion should be **GRANTED**.

### E. The Negligence Claim

Pension Strategies contends the allegations Plaintiffs make in support of their negligence claim are contradicted by the Value Life Plan documents and Pension Strategies' Service Letter Agreement and, as such, the Court need not accept such allegations as true. (Mem. in Supp. Of Mot. Of Def. Pension Strategies, LLC to Dismiss the First Am. Compl. For Failure to State a Claim 22.) Additionally, Pension Strategies contends the allegation that "Pension Strategies was hired to calculate the contribution to be made is categorically inconsistent with the legal requirements of a 412(i) plan." (*Id.* at 23.)

In response, the Plaintiffs note the Court's examination need not "extend to whether the allegations as pled match Defendant's interpretation of its duty of care based on any requirements set out by the 412(i) Plan." (Pls.' Resp. To Def. Pension Strategies, LLC's Mot. To Dismiss 17.) As such, Plaintiffs contend the facts, as set out in the First Amended Complaint, clearly support the legal elements of a negligence claim. (*Id.* at 17-19.)

Under New Jersey law, a negligence claim "must establish that defendant breached a duty of reasonable care, which constituted a proximate cause of the plaintiff's injuries." *Brown v. Racquet Club of Bricktown*, 471 A.2d 25, 29 (N.J. 1984)(citing *Hansen v. Eagle-Picher Lead Co.*, 84 A.2d 281 (N.J. 1951)). In the First Amended Complaint, Plaintiffs specifically allege "Defendant Pension Strategies owed the Bhatias and the Value Life Practice a duty of care to carefully and deliberately determine a permissible amount of money which the Bhatias, through the Value Life Practice, could legally contribute to the Value Life Plan and remain compliant with any IRS regulations." (First Am.

Compl. ¶ 147.)  Plaintiffs further allege Pension Strategies breached this duty by incorrectly advising Plaintiffs on such contributions.  (*Id.* at ¶¶ 148-49.)  As a result, Plaintiffs made excess contributions to the Value Life Plan and incurred IRS penalties.

Accepting these well-pleaded allegations as true, the Court finds Plaintiffs have adequately stated a claim for negligence against Pension Strategies.  While Pension Strategies contends such allegations conflict with their interpretation of the Value Life Plan documents, the Court notes such an argument tends towards the merits of Plaintiffs' claims and is more appropriately reserved for a dispositive motion.  Having thus found Plaintiffs' pleadings sufficient, to the extent Pension Strategies' Motion seeks to dismiss Plaintiffs' negligence claim under Rule 12(b)(6), the Motion is **DENIED**.

## IV.

## CONCLUSION

The Court finds Pension Strategies' Motion should be and hereby is **GRANTED in part** and **DENIED in part** (doc. 14).  To the extent Pension Strategies seeks to dismiss Plaintiffs' ERISA violation claim, fraud claim, common-law breach of fiduciary duty claim, and rescission claim, the Motion is **GRANTED**.  Accordingly, those claims are hereby **DISMISSED without prejudice**.  However, to the extent Pension Strategies' Motion seeks to dismiss Plaintiffs' negligence claim, the Motion is **DENIED**.

Dismissal of a claim short of a merits review is not taken lightly by the Court.  Thus, a plaintiff should be given the opportunity to amend a Complaint where it appears that more careful or detailed drafting might overcome the deficiencies on which dismissal is based.  *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n. 6 (5th Cir. 2000)(noting that a court may dismiss a claim for failing to

comply with Rule 9(b), but "it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead particularity after being afforded repeated opportunities to do so"); *Hitt v. City of Pasadena*, 561 F.2d 606, 608-09 (5th Cir. 1977) (observing that a complaint should only be dismissed under Rule 12(b)(6) "after affording every opportunity for the plaintiff to state a claim upon which relief can be granted"). Moreover, Plaintiffs in this case have specifically requested the opportunity to replead. (Pls.' Resp. To Def. Pension Strategies, LLC's Mot. To Dismiss 20-21.)

Accordingly, if Plaintiffs are able to replead any Counts to overcome all of the grounds stated herein for dismissal, they should do so by no later than twenty (20) days from the date of this Order. Further, any repleading shall be accompanied by a synopsis of no more than five (5) pages, explaining how the amendments overcome the grounds stated herein for dismissal. Should Plaintiffs replead, Pension Strategies is hereby granted leave to file a response to Plaintiffs' synopsis. Any such responses shall not exceed five (5) pages and must be filed within ten calendar days of the repleading. No further briefing will be permitted.

SO ORDERED.

DATED March 30, 2010

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE